**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 30, 2025**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SARAH WISHERT, | § | CASE NO. 25-52076-MMP |
| | § | |
| DEBTOR. | § | CHAPTER 7 |

**OPINION AND ORDER SUSTAINING OBJECTION TO EXEMPTION**

I. **INTRODUCTION**

The Court will sustain the Trustee's *Objection to the Debtor's Claims of Exempt Property* (ECF No. 20).[1] At hearing, argument focused on whether the Debtor's alleged oral lease with her mother allowed her to exempt her remainder interest in real property ("**Contested Land**") despite settled Texas law saying homestead protection does not attach to future real property interests. *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991). The Debtor's joint physical possession of the Contested Land with the life estate holder, her mother, complicates the analysis. The Debtor currently lives on the Contested Land with her mother in a double-wide

---
[1] All ECF citations are to the docket in Case No. 25-52076, unless otherwise noted.

1

manufactured home ("**Manufactured Home**"), which the Debtor alone claims as her homestead. In other words, the Debtor claims an uncontested homestead right in the Manufactured Home, and a remainder interest in the Contested Land, while the Debtor's mother claims a life estate in the Contested Land. The Debtor also alleges she has an indefinite term (in time and substance) oral lease with her mother entitling the Debtor to present possession of the Contested Land.

The Court concludes the Debtor cannot claim an exemption in her remainder interest because no valid lease exists to "bridge the gap" between her remainder interest and the type of interest required to claim homestead protection. Alternatively, even if a lease did exist, no terms of a lease suggest the Debtor holds a present possessory interest in the property that will overcome the life tenant's preexisting homestead interest and reach the Debtor's remainder interest for homestead exemption purposes. Therefore, the Court will sustain the Trustee's *Objection*.

## II.  JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. § 1408 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Opinion and Order serves as this Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.

## III.  BACKGROUND

In 2009, the Debtor acquired a remainder interest in the Contested Land. Debtor's Ex. 5 ("**Deed**"). In the Deed, the Debtor's mother, Emily Wishert, transferred the Contested Land to the Debtor but retained a life estate. *Id.*

Beginning in 2020, the Debtor made improvements to a Manufactured Home she owns which sits on the Contested Land. These improvements included updating the kitchen and

installing a bathroom in the dwelling that split the marriage line.[2] The Debtor's mother moved into that Manufactured Home with the Debtor in November 2021, at which time the Debtor says the lease agreement (with respect to the Contested Land) between the two began. No evidence was presented of a lease agreement between the Debtor and her mother with respect to the mother's residence in the Manufactured Home.

The Debtor did not offer any written lease regarding the Contested Land. The Debtor testified that she and her mother entered into an oral Contested Land lease agreement, but offered no evidence regarding the primary terms of any such lease—there are no terms on: payment or exchange of consideration, duration (the lease appears to be indefinite, as such it's unclear when or how the lease might end), what either party might do to default or cure a default, or exactly what either party must do to perform under the alleged lease. The Debtor appears to have merely labelled a general understanding she might have had with her mother a "lease."

The Debtor filed for bankruptcy noting her Manufactured Home and her remainder interest in the Contested Land on her schedules and claiming both as exempt property. ECF No. 1, Official Form 106A/B, p. 1, Official Form 106C, pp. 1–2. The Debtor designated she did not have any unexpired leases and listed none on her original schedules. *Id.*, Official Form 106G, p. 1. But *after* the Trustee filed his *Objection*, and concurrent with her *Response* (ECF No. 27), the Debtor filed an *Amended Schedule G* (ECF No. 25) listing a "lease" with her mother. The Trustee does not challenge the Debtor's exemption in her Manufactured Home. The Trustee only challenges the Debtor's claim that her remainder interest in the Contested Land can be impressed with a homestead exemption.

---

[2] A common type of manufactured home colloquially known as a "double-wide" is really two structures affixed to each other such that they operate as one dwelling. The points where the two meet is called the marriage line. *See Aucoin v. Southern Quality Homes, LLC*, 984 So. 2d 685, 688–89 n.5 (La. 2008) (describing the manufacturing of double-wides and formation of marriage lines).

## IV. ANALYSIS
### a. HOMESTEAD EXEMPTIONS GENERALLY

State law determines a debtor's exemption rights when a debtor choses state property exemptions, *Norris v. Thomas (In re Norris)*, 413 F.3d 526, 527 (5th Cir. 2005), as the Debtor did here, ECF No. 1, Official Form 106C, p. 1. The Debtor asserts a homestead exemption in her remainder (future) interest in the Contested Land. ECF No. 1, Official Forms 106A/B, p. 1 and 106C, p. 1.

A landowner has the burden of proving homestead protection, *Zorrilla v. Apyco Constr. II, LLC*, 469 S.W.3d 143, 159 (Tex. 2015), although courts liberally construe homestead protections in favor of debtors. *Inwood North Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987); *Norris*, 413 F.3d at 528; *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 316 (5th Cir. 2003) ("Homesteads are favorites of the law, and are liberally construed by Texas courts."); *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992). It is well-settled that "homestead protection [] can arise only in the person or family who has a *present possessory interest* in the subject property." *Laster*, 826 S.W.2d at 130 (emphasis added). Thus, future interests in property, including remainders, cannot be impressed with homestead exemption protections. *Id.* But the Texas Supreme Court appeared to open the door to an exception, saying:

> However, if a remainderman has a present right to possession in property sufficient to impress it with his homestead interest, *and the property is not subject to the preexisting homestead interest of another*, the property will be impressed with the homestead character when he receives it in fee simple, and its protection will date back to the time he began occupying it as his homestead.

*Id.* at n.2 (emphasis added). This dicta has caused at least two judges in this district to contend a homestead exemption could extend to a future interest if the future interest holder also holds a sufficient present possessory interest to "bridge the gap" between their present interest and their future interest. *In re See*, Case No. 14-11006, 2015 Bankr. LEXIS 2323, at *18–19 (Bankr. W.D.

4

Tex. July 14, 2015) (Judge Davis); ***In re Eskew***, 233 B.R. 708, 712 (Bankr. W.D. Tex. 1998) (Judge Kelly).

While the Fifth Circuit recognizes that a lease—a legal right to possess real property—is sufficient to create a present possessory interest and trigger homestead exemption eligibility, ***Resol. Tr. Corp. v. Olivarez***, 29 F.3d 201, 205 (5th Cir. 1994), a mere tenancy-at-will creates at best an insubstantial homestead exemption and a simple license has never been found to be sufficient and cannot be used to assert a homestead exemption. ***In re Brunson***, 498 B.R. 160, 163–64 (Bankr. W.D. Tex. 2013) (Judge Davis). And this last point makes sense as a licensee, with no right to exclude persons from the property and no legal interest in the property has nothing to exempt. ***Id.***; *see also* ***Brown v. Johnson***, 12 S.W.2d 543, 545 (Tex. Comm'n App. 1929) ("A casual reading of our Landlord and Tenant Law demonstrates that one of the essentials of a valid leasing of premises . . . is that exclusive possession of the premises rightfully belonging to one party is transferred to another.").

    **b.**    **THE STATUTE OF FRAUDS**

The Debtor does not hold an obvious present possessory interest in the Contested Land, but she says she has an oral lease (on the Contested Land) with her mother since her mother moved into her Manufactured Home in 2021.

Texas's Statute of Frauds applies to "a lease of real estate for a term longer than one year." TEX. BUS. & COMM. CODE § 26.01(b). The Statute itself states: "[a] promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement . . . ." ***Id.*** § 26.01(a). Because the Debtor alleges an oral lease with an indefinite term that has been in place for four years, the alleged lease violates the Statute of Frauds.

Exceptions to the Statute of Frauds[3] exist "to prevent the perpetration of [] fraud." **Hooks v. Bridgewater**, 229 S.W. 1114, 1116 (Tex. 1921). One such exception occurs when a party partly performed on an oral contract. *Id.* This partial performance exception requires (1) payment of consideration; (2) possession; and (3) valuable and permanent improvement. **Martinez v. Reconstruct Co.**, Case No. 13-CA-0541, 2015 WL 12552032, at *8 (W.D. Tex. Mar. 13, 2015); **Tijerina v. Gomez**, Case No. 04-13-00785, 2014 WL 7339362, at *3 (Tex. App.—San Antonio Dec. 23, 2014, no pet.) (citing **Hooks**, 229 S.W. at 1116).

"Actions relied on to establish the partial performance exception to the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." **Bookout v. Bookout**, 165 S.W.3d 904, 907–08 (Tex. App.—Texarkana 2005, no pet.). In addition to the three elements, there must be "strong evidence establishing the existence of an agreement and its terms." **Ezennia v. Wells Fargo Bank**, Case No. 10-5004, 2012 WL 1556170, at *4 (S.D. Tex. Apr. 27, 2012); *see also* **Boyert v. Tauber**, 834 S.W.2d 60, 63 (Tex. 1992) (saying the "key element" to the partial performance doctrine is corroboration of the oral agreement).

Though most cases applying Statute of Frauds exceptions concern land-sale contracts, some state appellate courts have applied the exception to other types of contracts. **Exxon Corp. v. Breezevale Ltd.**, 82 S.W.3d 429, 439–40 (Tex. App.—Dallas 2002, no pet.) (oil and gas deal); **Wiley v. Bertelsen**, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ) (employment contract); **Teague v. Roper**, 526 S.W.2d 291, 293 (Tex. App.—Amarillo 1975, writ ref'd n.r.e.) (land lease). If the partial performance exception applies to leases, the Debtor's "partial performance must be unequivocally referable to the agreement and corroborative of the fact that a

---

[3] The Trustee did not argue that the Statute of Frauds applied, and the Debtor did not seek to apply any Statute of Frauds exceptions, so the Court exercised its independent duty to examine the issue.

contract was actually made." *Exxon Corp.*, 82 S.W.3d at 439–40. No such evidence was presented here.

### 1. PAYMENT, POSSESSION, AND IMPROVEMENT

The Debtor's actions showing her payment, possession, and improvement (related to the Contested Land), fail because they do not suggest they were performed under or in furtherance of an alleged lease's terms.

The Debtor offered no evidence that money (or other consideration) changed hands between her and her mother. Instead, she said she provides care for her mother that is compensated, in part, by a hospital out of nearby Floresville. Although she did not schedule two leases, she said that "the lease" is really two leases: the Debtor's lease of the Contested Land and the mother's lease of the Debtor's Manufactured Home. The Debtor says her Manufactured Home rests on the Contested Land, and she resides there. She marked the Contested Land as her residence on her schedules and petition. She says she is not sure but believes her mother cannot exclude her from the property. For improvements, the Debtor can rely on her recent remodel of her Manufactured Home which includes new flooring, walls, bathrooms, and a ramp to a porch connected to the Manufactured Home.

The Debtor's actions, whether in offering consideration for or possessing or improving property, must relate to the alleged lease tied to the homestead exemption claim. *Chevalier v. Lane's, Inc.*, 213 S.W.2d 530, 533–34 (Tex. 1948); *see also Martinez v. DKTA Enters. Ltd.*, Case No. 07-19-00116, 2020 WL 2786942, at *4 (Tex. App.—Amarillo May 29, 2020, no pet.) ("Conduct which may be explained without reference to [the contract] does not constitute partial performance.").

The Debtor did not say she provides care for her mother because of an oral lease. Rather, it appears the Debtor cares for her mother (beyond what the hospital pays her for) out of the goodness of her heart, which is admirable. The Debtor did not say she leases her Manufactured Home to her mother in exchange for her mother leasing the Contested Land to the Debtor. She did not say that consideration for a possessory interest in the Contested Land (one alleged lease) was in exchange for the other (her mother's) lease of the Manufactured Home, and the Debtor did not say the Manufactured Home rests on the Contested Land only with reference to any lease. The Debtor's counsel's leading questions to the Debtor reveals the uncomplicated state of the Debtor's relationship with the Contested Land:

> Debtor's Counsel: "you allow your mother to live at the house."
>
> Debtor: "yes."
>
> Debtor's Counsel: "and she allows your house to stay on her land."
>
> Debtor: "yes."

This interaction shows that each have granted the other a license, but does not link the licenses as being offered in exchange for each other. The Debtor did not say that but-for her mother leasing the Contested Land to the Debtor, she would not have the Manufactured Home on the Contested Land for the two of them to live in. The Debtor also did not say that but-for the Debtor's Manufactured Home being on the Contested Land and the Debtor allowing her mother to live there, her mother would not lease the Contested Land to the Debtor. Rather, the Debtor testified that she allowed her mother to live in her newly remodeled Manufactured Home on the Contested Land so that her 90-year-old mother could live in a safer home; not in reference to any alleged lease(s) between the Debtor and her mother. Without evidence of any consideration given in

8

exchange for the Debtor staying on the Contested Land, the Debtor fails the first element of the Statute of Frauds exception.

The Debtor says she has lived on the Contested Land her whole life (outside of four years). But continuing to reside somewhere is different from acquiring legal possession. *See* **Teague**, 526 S.W.2d at 293 ("[I]f the grantee is already in possession when the contract is made, a continuance of possession will not ordinarily suffice."). Particularly where, as here, that continued possession is without reference to the terms of a new alleged lease. Indeed, the Debtor testified that when her mother moved in with her, her Manufactured Home was already on the Contested Land and her and her mother agreed that the Debtor and her Manufactured Home could stay on the land, but the Debtor was "going to do that anyway." The Debtor said regardless of the alleged lease, she would stay on the land, confirming any possession was unrelated to a lease.

Furthermore, although joint possession is possible, no such arrangement exists here. **Sharp v. Stacy**, 535 S.W.2d 345, 349 (Tex. 1976) ("[J]oint physical possession of the land by the transferor and transferee does not preclude relief from the statute of frauds where the transferee's possession clearly evidenced a surrender of ownership and control by the transferor."). The undisputed Wilson County property records show the Contested Land is owned by the Debtor's mother. Trustee's Ex. 4. The Debtor and her mother share possession of the Manufactured Home which rests on the Contested Land, which could mean they also share the Contested Land. But they do not share the same rights in the Contested Land. Each's interest does not carry the same bundle of sticks. For example, the Debtor cannot exclude her mother from the Contested Land. The Deed does not allow it, and no evidence suggests any alleged lease's terms allow it either. But the Debtor's mother has every right to exclude the Debtor. Nothing suggests the mother has surrendered her rights in the Contested Land to the Debtor. Rather, the Debtor has consistently

9

said the Contested Land is her mother's land. The Debtor's legal interest is only in the land after her mother dies. It is not a present possessory interest. Thus, the Debtor and her mother are not in joint possession of the Contested Land; her mother possesses the Contested Land and allows the Debtor and her Manufactured Home to be there. Without evidence that the Debtor legally possesses the Contested Land, whether under an alleged lease(s) or otherwise, the Debtor fails the second element.

The Debtor's improvements are not to the Contested Land, but to her Manufactured Home. Texas law recognizes that a manufactured home is by default separate and apart from the land it sits on. *See* TEX. TAX CODE § 11.432 (saying the land a manufactured home sits on can only be claimed exempt if the land and the manufactured home are owned by the same person and that person occupies the manufactured home and the land as their principal residence); TEX. OCC. CODE. § 1201.2055 (providing an option for an owner to elect whether the manufactured home is real or personal property); TEX. PROP. CODE § 2.001 (saying unless a person elects for their manufactured home to be treated as real property and files the required documentation, it is personal property); *Id.* § 63.003 (saying when a lien on a manufactured home changes from a personal property lien to a real property lien). The general rule is that improvements to manufactured homes do not improve the value of the underlying realty, unless the nature of those improvements are such that it makes the manufactured home permanently attached to and part of the realty. *See **Burrus v. Reyes**,* 516 S.W.3d 170, 177–78, 192 (Tex. App.—El Paso 2017) (finding pouring a concrete slab on which to build additions to a manufactured home and installing fixtures constituted improvements to the real property).

There is a lack of evidence that the Debtor's improvements to her Manufactured Home improved the Contested Land or were permanent. Adding a deck, which may include a ramp, and

10

a skirt around the home is not enough to overcome the default rule that the structure is separate and apart from the land. Holding otherwise would allow the exception to swallow the rule as it is only natural for manufactured homes to have some kind of structure or addition to connect the elevated manufactured home to the ground it sits on.

The types of improvements described by the Debtor are for the Manufactured Home and not the Contested Land that it sits on. Indeed, the Wilson County property records do not show the Manufactured Home as part of the Contested Land's valuation. Trustee's Ex. 4.[4] And the Debtor's schedules show that she valued the Manufactured Home apart from the Contested Land. Because the Manufactured Home is personal property separate from the Contested Land, improvements to it do not improve the value of the underlying Contested Land.

Similarly, these improvements are not permanent, as required by the partial performance exception, because the Manufactured Home itself is not permanent. The Wilson County property records do not recognize the Debtor's Manufactured Home as a permanent structure, otherwise it would be valued along with the land just like the older mobile home is. Trustee's Ex. 4. Thus, the County thinks it can be moved. Despite the Debtor's arguments, the Manufactured Home can, by its nature, be moved. It is not affixed to the land, otherwise, she could not claim a homestead interest in the Manufactured Home, instead it would be a part of the underlying realty. Most of the Debtor's testimony centered on the interior remodel to her Manufactured Home, which is very different than the type of improvements undertaken by the Reyes family in ***Burrus v. Reyes*** who, among other things, added rooms to the mobile home. ***Burrus***, 516 S.W.3d at 178.

---

[4] The CAD report includes a $63,270 valuation for improvements on the Property, including an older manufactured home. Trustee's Ex. 4, p. 1. But this is for the Debtor's mother's old manufactured home, not the Debtor's Manufactured Home, which she values at $102,500. *See id.*; ECF No. 1, Official Form 106A/B, p. 2.

Moreover, the improvement cited was made before any alleged lease began. The Debtor cannot rely on her remodel of her Manufactured Home that took place a year before her mother moved in (and the alleged lease began) to meet the partial performance exception. Improvements made before an alleged oral agreement do not support its existence. Thus, the improvement cited cannot meet the third element.

The partial performance exception requires the Debtor's actions be unequivocally performed with relation to the terms of the alleged oral lease. *See, e.g.,* **Exxon Corp.**, 82 S.W.3d at 439–40. The only reason for the Debtor's actions is not for the performance of the alleged lease, rather there are many reasons for her actions. See **Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.**, 516 S.W.3d 147, 162–63 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (finding sufficient evidence to conclude "performance had no other design than to fulfill" the alleged oral agreement). Her actions appear wholly without regard to an alleged lease of the Contested Land. There is no evidence that, under an alleged lease, the Debtor cares for her mother, allows her mother to live in her Manufactured Home, legally possesses the Contested Land, or improved her Manufactured Home. Thus, these acts do not corroborate the Debtor's assertion that a lease was made.

### 2. EVIDENCE OF A LEASE

Given the facts outlined above, the Court doubts a true lease exists between the Debtor and her mother. Not only did she not list such an agreement on her original schedules, she affirmatively stated no such agreement existed. The Debtor presented no terms of an alleged lease. She said it began when her mother moved in, but did not offer when it would end. She did not say whether an alleged lease required her to provide care to her mother or allow her mother to reside in her Manufactured Home. She also did not say an alleged lease required her mother to allow the Manufactured Home to sit on the Contested Land. Without terms, the Court cannot say an alleged

lease exists. Given that the purpose of the partial performance exception is to avoid fraud, the Court cannot employ this exception because there is no corroborating evidence that a lease exists. *See* **Boyert**, 834 S.W.2d at 63 (finding a completed sale insufficient parol evidence because it did not corroborate a broker's argument he was entitled to a commission from the sale); **Hooks**, 229 S.W. at 1116 ("[T]o warrant equity's 'breaking through the statute' to enforce such a parol contract, the case must be such that the nonenforcement of the contract—or the enforcement of the statute—would, itself, plainly amount to a fraud.").

The Court finds the Debtor allows her mother to live in her Manufactured Home. And the mother allows the Debtor to have her Manufactured Home on the Contested Land. Such an arrangement is more akin to a license than a lease. These are separate agreements, not related to each other. These arrangements do not grant the Debtor any uninterruptible, present possessory interest in the Contested Land. The Debtor credibly testified that since her childhood she has lived on Contested Land. But just because she has lived there does not mean that she has a present possessory interest in the Contested Land. That the Debtor's mother allows the Debtor and her Manufactured Home to be on the Contested Land does not mean the Debtor has a lease.

At most, the Debtor has a tenancy subject to the will and whim of her mother, which cannot amount to a present possessory interest sufficient to allow the Debtor to claim a homestead interest. *See* **Brunson**, 489 B.R. at 166–67 ("The consistent rationale of these cases is that [because] the tenant's homestead exemption 'will depend upon the will and whim' of the current owner, it is no protection against alienation of a remainder interest the tenant may hold." (quoting **Perry**, 345 F.3d at 315)). The Debtor's failure to claim an exemption in a lease of the Contested Land also suggests no lease exists.

Finding no valid lease exists, the Debtor does not have a present possessory interest in the Contested Land which she can impress with a homestead exemption claim.

### c. THE MOTHER'S INTERVENING PREEXISTING HOMESTEAD INTEREST

Even if a lease existed, the Debtor cannot exempt her remainder interest unless (1) she has a present possessory interest that bridges the gap to her future interest; and (2) there is no preexisting homestead interest that could sever that bridge. *See*, 2015 Bankr. LEXIS 2323, at *18–19; *Brunson*, 498 B.R. at 163–64; *In re Aguirre*, Case No. 12-51304 (Bankr. W.D. Tex. July 17, 2012); *Eskew*, 233 B.R. at 712. Two cases say a lease could accomplish this: *See* and *Eskew*. But the critical fact in both cases was the lack of an intervening property interest that could cause a gap between the leasehold interest and the future interest. *See*, 2015 Bankr. LEXIS 2323, at *19 (not subject to a life estate); *Eskew*, 233 B.R. at 712 (oral lease was for the full term of the life estate to the exclusion of the life estate holders).

This makes sense as *Laster* conditioned the possibility of a present possessory interest bridging the gap to a future interest on the lack of an intervening preexisting homestead interest. *Laster*, 826 S.W.2d at 130 n.2 (saying bridging is possible only if the property is "not subject to the preexisting homestead interest of another"). Because the Debtor's mother has a life estate, lives on the Contested Land, and claims the Contested Land as her homestead, she holds a preexisting homestead interest. And because the Debtor's mother has ceded no part of her interest in the Contested Land to the Debtor and because no persuasive evidence shows the Debtor holds anything more than a tenancy-at-will, the Debtor's mother holds an intervening preexisting homestead interest precluding the Debtor's homestead exemption claim. Without a present

14

homestead interest in the Contested Land,[5] the Debtor cannot bridge the gap to claim a homestead exemption in her remainder interest in the Contested Land.

### d. DEBTOR'S ALTERNATIVE ARGUMENT

The Debtor argues that if her remainder interest is not exempt property and is sold by the Trustee as an asset of her bankruptcy estate, she will be forced to move her Manufactured Home, which will compromise her homestead interest in the Manufactured Home because it is no longer mobile after being on the Contested Land for 26 years. First, this argument misses the question before the Court. The Debtor is trying to claim an exemption in a future interest in real property, and the only way to do that is to show a present possessory interest in the real property. *See* **Heggen v. Pemelton**, 836 S.W.2d 145, 149 (Tex. 1992) ("In [*Laster*] . . . we held that a homestead right cannot arise absent a present possessory interest in the house.") (Cornyn, J. concurring). Thus, the question is whether the Debtor holds a present possessory interest in the Contested Land sufficient to bridge the gap to her remainder interest such that the remainder interest could be claimed as exempt property. That the home may be immobile does not affect that question.

Second, the argument is without supporting evidence. Texas law treats manufactured homes as mobile by default. Evidence before the Court suggests no reason to deviate from that default. Nevertheless, the Court will briefly layout and address the substance of the Debtor's argument below.

The Debtor says splitting the double-wide along the marriage line "would destroy the flooring, tiles, kitchen island and other parts [remodeled bathrooms]" and that transporting it "would likely lead to structural damages and make the home uninhabitable, thus leading to

---

[5] The Court notes that the Debtor did not claim any lease was exempt on her schedules and has not amended her Schedule C to claim a lease as exempt either. ECF No. 1, Official Form 106C, pp. 1–3. Thus, even if a lease did exist, it has not been claimed as exempt and therefore cannot bridge the gap to exempt the Debtor's remainder interest in the Contested Land.

complete loss." ECF No. 27 ¶ 17. The Debtor's opinion is not an expert opinion and was not offered as such. While the Court believes that the Manufactured Home will incur damages if moved, the Court also believes all such manufactured homes will incur damages and that fact can never be enough by itself to reclassify a manufactured home as a permanent structure on real property. The Debtor testified that skirting, a porch, and a handicap ramp are attached to the Manufactured Home but not the movable chassis on which it sits. The Debtor did not articulate what materials were used to construct these structures, or how they attach to the Manufactured Home.

Though these additions may be affixed to the Manufactured Home, the Debtor did not say they are, and the evidence before the Court does not suggest they are. There was no testimony on whether the skirting could damage the Manufactured Home or be damaged by the Manufactured Home if moved. Similarly, there was no testimony on whether the porch or ramp could be damaged or cause damage if moved. Additions of this kind are not permanently attached to a manufactured home or the real property it sits on. They can be removed and reattached to a different manufactured home or different piece of real property with limited damage. This limited damage cannot by itself be enough to create evidence of permanence. Based on the evidence before the Court, the skirting, decking, and ramp are not permanently attached to the Manufactured Home or the Contested Land and are, therefore, mobile.

No evidence shows the Manufactured Home would be damaged if forced to move. Rather, the Debtor's counsel asserted that it is common knowledge that a manufactured home is no longer mobile after resting on land for more than twenty years. This is not evidence. The Court considers this assertion argument, unsupported by evidence, and notes that other evidence in the record suggests the opposite is true.

As discussed earlier, *supra* pp. 10–11, Texas law recognizes that manufactured homes are mobile and the legal records admitted into evidence suggest that this Manufactured Home is mobile. The Court believes that the Manufactured Home and any after-market attachments are mobile. The Court does not have enough evidence that moving the Manufactured Home would cause any significant damage; and has no evidence of how much damage could be caused. That the Manufactured Home could be damaged when moved could be true of any non-permanent structure and does not change the nature of the Manufactured Home being separate from the Contested Land it sits on. Finally, that the Manufactured Home has been so modified that it could cause damage is not a consideration for whether the Debtor's remainder interest in the Contested Land, which is separate from the Manufactured Home, is exempt. Instead, the question is whether the Debtor has a present possessory interest in the Contested Land. The Debtor does not.

    e.    **PLANNING FOR A BANKRUPTCY CASE FILING**

While the Court does not know how this case presented to counsel or what kind of timing issues might have attached to its filing, the facts of the case suggest appropriate pre-bankruptcy planning could have potentially avoided many of the issues with which the Debtor now has to contend. If, pre-bankruptcy, the Debtor knew she only had a remainder interest in the Contested Land and knew that Texas homestead law required that she have a present possessory interest in the Contested Land to bridge the gap to her remainder interest, the Debtor might have consulted with her mother and pursued other options before filing for bankruptcy. For instance, the Debtor could have asked her mother to also give the Debtor a life estate in the Contested Land or simply asked the Debtor's mother to convey her mother's life estate in the Contested Land to the Debtor in exchange for an indefinite lease back or other consideration (like regular care for the Debtor's mother). Armed with appropriate knowledge of the law, the Debtor could have taken the actions

to obtain a present possessory interest or to prove her Manufactured Home was permanent and part of the real property, rather than mobile, separate, personal property.

V. **CONCLUSION**

The Debtor's lack of a written lease and failure to show the elements necessary to satisfy the partial performance exception to the Statute of Frauds prevent the Debtor from establishing a present possessory interest in which she might claim a homestead interest in the Contested Land. Even if she had met the partial performance exception, she has not presented corroborating evidence that a lease exists, nor established its essential terms. Without a lease, the Debtor lacks a present possessory interest in the Contested Land. Without a present possessory interest to which a homestead exemption could attach, she cannot bridge the gap and claim a homestead exemption in her remainder interest. Even if the Debtor had presented sufficient evidence to establish the alleged lease constituted a present possessory interest, the Debtor's mother's interest in the Contested Land is an intervening, preexisting homestead interest that precludes the Debtor from claiming a similar homestead exemption in her alleged lease interest. It is, therefore,

**ORDERED** that the Trustee's *Objection to Exemption* (ECF No. 20) is **SUSTAINED**.

# # #